IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Aug 31, 2016*
SUE BEITIA, CLERK

| | |
|---|---|
| CHRISTOPER WINDNAGLE and DEANNA WINDNAGLE,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>                    Defendants. | Civil No. 16-00218 JMS-KJM<br><br>FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS CHRISTOPHER WINDNAGLE AND DEANNA WINDNAGLE'S MOTION TO DECLINE JURISDICTION AND REMAND PROCEEDINGS |

**FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS
CHRISTOPHER WINDNAGLE AND DEANNA WINDNAGLE'S MOTION
TO DECLINE JURISDICTION AND REMAND PROCEEDINGS**

Plaintiffs Christopher Windangle and Deanna Windangle

("Plaintiffs") filed a Motion to Decline Jurisdiction and Remand Proceedings on

June 2, 2016 ("Motion"). *See* ECF No. 12.  Defendant State Farm Mutual

Automobile Insurance Company ("State Farm") filed its Opposition on July 6,

2016.  *See* ECF No. 17.  Plaintiffs filed their Reply on July 13, 2016.  *See* ECF No.

18.  The Court held a hearing on the Motion on July 27, 2016.  Bert S. Sakuda,

Esq. appeared on behalf of Plaintiffs.  *See* ECF No. 19.  Richard B. Miller, Esq.

appeared on behalf of State Farm.  *Id*.

After careful consideration of the Motion, the parties' supporting and

opposing memoranda, the arguments of the parties' counsel, and the record

established in this action, the Court FINDS and RECOMMENDS that the district

court GRANT the Motion.

## BACKGROUND

On March 11, 2016, Plaintiffs filed a personal injury action against

Jermar Pascual in the Circuit Court of the First Circuit State of Hawaiʻi ("state

court").  *See* ECF No. 12-4.  On March 16, 2016, Plaintiffs filed a separate

Complaint for Declaratory Judgment against State Farm and Mr. Pascual

("Complaint"), also in state court.  In the Complaint, Plaintiffs allege that on or

around October 16, 2015, Mr. Pascual drove his vehicle, which was insured by

State Farm, into the rear of Mr. Windnagle's bicycle.  Compl. ¶ 4, 18; ECF No. 1-1

at 2, 4.  Plaintiffs allege that State Farm also insured two of Plaintiffs' vehicles, a

Subaru Crosstrek and a Toyota Sienna.  Compl. ¶ 19, 21; ECF No. 1-1 at 4.

Plaintiffs assert that, as of September 5, 2013, both of Plaintiffs' vehicles' policies

included bodily injury liability limits of $100,000 each person/$300,000 each

accident and underinsured motorist benefits ("UIM") of $100,000 each

person/$300,000 each accident on a stacking basis.  *Id*.  Plaintiffs contend that on

November 25, 2013, without authorization from Plaintiffs, State Farm reduced the

UIM benefits on the Subaru Crossteck policy to $20,000 each person/$40,000 each

accident, still on a stacking basis.  Compl. ¶ 22-24; ECF No. 1-1 at 5.

On May 3, 2016, State Farm filed its Answer to the Complaint in state court. *See* ECF No. 11-5. State Farm contends that it sent Plaintiffs a letter asking them to sign a form titled, Acknowledgment of Offer of Uninsured and Underinsured Motorist Coverage (Including Offer of Stacking Option) and Coverage Selection or Rejection form ("Selection/Rejection Form"), which asked Plaintiffs to indicate whether Plaintiffs wanted underinsured ("UM") and UIM coverage, and if so, whether they wanted coverage limits less than their $100,000/$300,000 bodily injury liability limits on the Subaru Crosstrek policy. Answer ¶ 6; ECF No. 11-5 at 2. State Farm admits that it is unable to locate a copy of the signed Selection/Rejection Form for the Suburu Crosstrek policy. Answer ¶ 8-9; ECF No. 11-5 at 3. State Farm maintains that because Plaintiffs never completed and returned the Selection/Rejection Form indicating the UM and UIM limits that they desired, the policy included the statutory minimum UIM limits of $20,000 per person and $40,000 per accident, as indicated in the policy's declarations. ECF No. 17 at 3.

On May 5, 2016, State Farm removed the case to this Court. *See* ECF No. 1. In its Notice of Removal, State Farm asserts that the Complaint seeks a declaratory judgment solely against State Farm and seeks no relief whatsoever against Mr. Pascual. *Id*. at 3. State Farm contends that Plaintiffs joined Mr. Pascual in this declaratory judgment action solely for purposes of destroying

diversity and depriving this Court of subject matter jurisdiction.  State Farm thus

argues that Mr. Pascual has been fraudulently joined and that this Court has

jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

*Id*.

## DISCUSSION

Plaintiffs move this Court to decline jurisdiction and remand the case

to state court.  Plaintiffs first argue that Mr. Pascual is a properly joined, non-

diverse defendant whose inclusion in this action does not constitute a fraudulent

joinder.  Next, applying the factors in *Brillhart v. Excess Ins. Co. of America*, 316

U.S. 491, 494 (1942), Plaintiffs contend that this Court should decline jurisdiction

and remand this case to state court because: (1) the sole basis for the action is for

declaratory relief; (2) this action involves a non-removable parallel proceeding

pending in state court; (3) this action involves insurance law issue reserved for the

states; and (4) there is no compelling federal interest in this case because the sole

basis for removal is diversity of citizenship.  ECF No. 12-2 at 1.

State Farm contends that Mr. Pascual has been fraudulently joined.

State Farm argues that Plaintiffs have not stated a claim against Mr. Pascual in the

instant action.  ECF No. 17 at 4.  State Farm asserts that Plaintiffs "seek only a

declaratory judgment determining that State Farm's policy includes UIM limits

equal to the [bodily injury] limits, i.e., $100,000 per person/$300,000 per

accident." *Id*. State Farm thus argues that Plaintiffs joinder of Mr. Pascual must

be disregarded under the fraudulent joinder doctrine. In addition, State Farm

argues that the factors in *Brillhart* weigh against remand in this case.

## I. FEDERAL JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only

that power authorized by Constitution and statute . . . . It is to be presumed that a

cause lies outside this limited jurisdiction, and the burden of establishing the

contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life

Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Here, both parties

agree that, if this Court does in fact have jurisdiction, its jurisdiction is pursuant the

Declaratory Judgment Act. *See* ECF No. 12-2 at 7; ECF No. 17 at 7.

"The Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural

statute that provides a federal remedy for litigants seeking a judicial declaration of

rights." *Hawaii v. Sekai Kyusei Kyo Izunome Church*, No. CIV 07-

00252SOM/BMK, 2009 WL 222989, at *2 (D. Haw. Jan. 30, 2009). It provides,

in relevant part: "any court of the United States . . . may declare the rights and

other legal relations of any interested party seeking such declaration." 28. U.S.C. §

2201(a). The Declaratory Judgement Act does not itself, however, confer federal

jurisdiction. *Sekai Kyusei Kyo Izunome Church*, 2009 WL 222989, at *2. "To

entertain an action under the Declaratory Judgment Act, a court must have a basis

for federal subject matter jurisdiction independent of the Declaratory Judgment Act." *Id.*

Plaintiffs' instant action only seeks declaratory judgment. The complaint does not plead any claims arising under federal law. Accordingly, there is no original federal-question jurisdiction. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within the statute [28 U.S.C. § 1331], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

Federal courts also have diversity jurisdiction under 28 U.S.C. § 1332(a) if the amount in controversy exceeds $75,000, exclusive of interest and costs, and "where the citizenship of each plaintiff is different from that of each defendant"—i.e., complete diversity. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). Here, the parties do not dispute that the amount in controversy exceeds $75,000, exclusive of interests and cost. On the face of the Complaint, however, this Court lacks diversity jurisdiction because of Mr. Pascual's inclusion as a defendant.

"[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Here, because this Court lacks federal-question jurisdiction, this Court may "decline" jurisdiction as the Plaintiffs request,

or "retain" jurisdiction as State Farm requests, only if this Court determines that

Mr. Pascual has been fraudulently joined.  Otherwise, a finding that joining Mr.

Pascual was proper would defeat diversity jurisdiction, leaving the Court without

jurisdiction to entertain the Motion.  *See e.g., Princess Cruises, Inc*., 236 F.3d at

1067 ("Because [one of the defendants], like [the plaintiff], is deemed a citizen of

Texas for purposes of diversity jurisdiction, its presence in the lawsuit at the time

of removal defeated diversity jurisdiction unless it was fraudulently joined.");

*Sekai Kyusei Kyo Izunome Church*, CIV 07-00252 SOM/BMK, 2009 WL 222989,

at *3 ("This court lacks subject matter jurisdiction, as the Declaratory Judgment

Act does not confer independent federal jurisdiction.  Plaintiffs do not raise a

federal question and do not even allege diversity jurisdiction.").

        "The problem with the fraudulent joinder inquiry is that the Court

must consider the validity of a claim that defeats diversity, a claim over which the

Court has no jurisdiction."  *Davis v. Prentiss Properties Ltd., Inc.*, 66 F.Supp.2d

1112, 1114 (C.D. Cal. 1999).  "Only by considering the merits of the non-diverse

claim, can the Court be assured of jurisdiction over any of the claims in the case."

*Id*.  Accordingly, because a court "considering a question of fraudulent joinder is

unsure of its jurisdiction," the Court must walk a very fine line—"it must consider

the merits of a matter without assuming jurisdiction over it."  *Id*.  *See also B., Inc.*

*v. Miller Brewing Co.*, 663 F.2d 545, 554 (5th Cir. 1981) (cautioning that a court

must not "lose sight of the important questions of federal jurisdiction" implicated in fraudulent joinder cases).

This Court thus first considers whether Mr. Pascual has been "fraudulently joined" before it discusses its recommendations to the district court on whether to "decline" or "retain" jurisdiction.

## II.  FRAUDULENT JOINDER

"Fraudulent joinder is a term of art."  *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  The motive for joining a non-diverse defendant is immaterial.  *Albi v. St. & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944).  "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'"  *Morris,* 236 F. 3d at 1067 (quoting *McCabe*, 811 F.2d at 1339) (alterations in original).

There is a general presumption against fraudulent joinder.  *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).  "[T]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."  *Philip Morris USA*, 582 F.3d at 1044 (citing *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)).

8

Notwithstanding this heavy burden, fraudulent joinder can be shown if the defendant can demonstrate, by clear and convincing evidence, "that there is no possibility, based on the pleadings, that plaintiff can state a cause of action against the non-diverse defendant in state court." *Catholic Foreign Mission Soc. of Am., Inc. v. Arrowood Indem. Co.*, 76 F. Supp. 3d 1148, 1156 n.1 (D. Haw. 2014) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)); *Hamilton Materials, Inc.*, 494 F.3d at 1206 ("Fraudulent joinder must be proven by clear and convincing evidence.").

Although a court may look to evidence outside of the pleadings in determining fraudulent joinder, it must do so in a summary manner. *Unterberg v. Exxon Mobil Corp.*, No. CIV. 14-00181 JMS, 2014 WL 3420779, at *6 (D. Haw. July 10, 2014). "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits." *Id.* (citing *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2004)). Accordingly, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* (citing *Philip Morris USA*, 582 F.3d at 1045).

Here, Plaintiffs Complaint requests the following relief: (1) "a binding declaration that Defendant State Farm must provide underinsured motorist benefits limits under the Subaru Crosstrek policy in the amount of $100,000 each

person/$300,000 each accident on a stacking basis"; (2) "a binding declaration that Defendant State Farm must pay Plaintiffs underinsured motorist benefits for the value of injuries and damages sustained by Plaintiffs up to the limits this Court determines is applicable"; and (3) reasonable attorneys' fees and expenses in the instant declaratory judgment action."  ECF No. 1-1 at 7.  Plaintiffs do not seek any damages against Mr. Pascual.  The Complaint alleges only that Mr. Pascual "is liable to Plaintiffs for special and general damages . . . as may be permitted by Hawaii law" and that under state law, "Defendant State Farm possesses a subrogation right against Defendant Pascual to recover UIM benefits paid to the Plaintiffs arising out of injuries and damages caused by Defendant Pascual."  ECF No. 1-1 at 6; Compl. ¶ 33-34.

Plaintiffs nonetheless assert that they name Mr. Pascual as a defendant because he has a direct interest in this case—State Farm's subrogation rights give it the right to recover from Mr. Pascual any amounts State Farm pays in UIM benefits.  ECF No. 12-2 at 6.  At the hearing on the Motion, however, State Farm represented that it had affirmatively waived its rights to subrogation in this matter and would, under no circumstances, pursue Mr. Pascual.  Plaintiffs did not dispute this representation.  This discrete and undisputed fact eliminates Plaintiffs' sole reason alleged for including Mr. Pascual as a defendant in this action.

Based on the Plaintiffs' Complaint and State Farm's representation

that it has waived its subrogation rights in this action, this Court finds that Mr.

Pascual was fraudulently joined because there is no possibility that Plaintiffs can

state a cause of action against Mr. Pascual in this declaratory judgment action in

state court.  This action asserts a cause of action only against State Farm, not Mr.

Pascual.  Accordingly, this Court finds that it has the necessary diversity

jurisdiction to consider whether to exercise jurisdiction over Plaintiffs' declaratory

judgment claims.

## II.  REMAND

The "decision whether to exercise jurisdiction over a declaratory

action lies in the sound discretion of the district court."  *Huth v. Hartford Ins. Co.*

*of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002).  "Of course, this discretion is

not unfettered."  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir.

1998).  Although not exhaustive, the following factors enunciated in *Brillhart*

remain the philosophic touchstone for the district court in deciding whether to

exercise jurisdiction over a declaratory judgment action: (1) avoidance of needless

determination of state law issues; (2) discouragement of filing a declaratory action

as a means of forum shopping; and (3) avoidance of duplicative litigation

("*Brillhart* factors").  *Id.* at 1225.

The Court finds that in light of the factual and legal issues presented

in this declaratory action, the *Brillhart* factors weigh in favor of remanding this

case to state court.

A.     Needless Determination of State Law Issues

"A 'needless determination of state law' may involve an ongoing parallel state proceeding regarding the 'precise state law issue,' an area of law Congress expressly reserved to the states, or a lawsuit with no compelling federal interest (e.g., a diversity action)." *Nautilus Ins. Co. v. K. Smith Builders, Ltd*., No. CV 09-00509 JMS/BMK, 2010 WL 346457, at *3 (D. Haw. Jan. 29, 2010) (citing *Cont'l Cas. Co. v. Robsac Indus*., 947 F.2d 1367, 1371-72 (9th Cir. 1991) (*overruled in part on other grounds by Dizol*, 133 F.3d at 1225)).

"The concern in this factor is with unsettled issues of state law, not fact-finding in the specific case." *Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1118 (D. Alaska 1998) (citing *Robsac Indus*., 947 F.2d at 1371). "When state law is unclear, '[a]bsent a strong countervailing federal interest, the federal court should not elbow its way . . . to render what may be an 'uncertain' and 'ephemeral' interpretation of state law.'" *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (alterations in original) (citing *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992)). "Accordingly, at issue for this factor is not merely whether the action raises a state law issue (which is the case for all diversity actions), but rather whether it presents an unsettled state law issue." *Nautilus Ins. Co.*, 2010 WL 346457, at *3.

State Farm argues that this case does not involve unsettled state law issues.  *See* ECF No. 17 at 9.  State Farm asserts that the issues in this case "involve the interpretation of the subject insurance policies and the application of Hawaii insurance law."  *Id*.  State Farm contends that these issues are not "unusually complex," and that "the courts of this district have significant experience resolving coverage matters involving UM and UIM coverage."  *Id*.

Plaintiffs argue that this case requires resolution of an unsettled question of state law.  *See* ECF No. 12-2 at 16-17.  Plaintiffs contend that the state law issue in this case is whether an insurer can unilaterally reduce an insured's UIM benefits without written rejection from the insured.  *Id*. at 14-15.  Plaintiffs assert that there are no state appellate court decisions on this particular issue.  ECF No. 18 at 6.  Plaintiffs contend that the closest relevant authority to this issue is *Macabio v. TIG Insurance Co*., 87 Haw. 307, 955 P.2d 100 (1998), but that the facts in *Macabio* are distinguishable from the facts in this case.  Plaintiffs thus argue that the state court, not this Court, should determine whether *Macabio* is applicable to the facts in this case.  *See* ECF No. 12-2 at 15-16; ECF No. 18 at 2-3. The Court agrees.

Hawaii Revised Statutes Section 431:10C-301(d) requires an insurer to offer the insured the opportunity to purchase UM and UIM coverage by offering the following options with each motor vehicle insurance policy: "(1) The option to

stack uninsured motorist coverage and underinsured motorist coverage; and (2)
The option to select uninsured motorist coverage and underinsured motorist
coverage, whichever is applicable, up to but not greater than the bodily injury
liability coverage limits in the insured's policy."

In *Macabio*, the insured plaintiffs brought suit against their
automobile insurer arguing that, pursuant to Section 431:10C-301(d), their insurer
"was required to obtain a written rejection of stacking coverage from them;
otherwise, the stacking coverages must be implied as a matter of law."  87 Haw. at
311, 955 P.2d at 104.  The Hawai'i Supreme Court agreed.  The Court held that
when the subsections in Section 431:10C-301 pertaining to stacking were read
together, it was clear that the insurer "was required to obtain a *written* rejection [of
UIM and UM benefits] from the plaintiffs."  *Id*. at 317, 955 P.2d at 111 (emphasis
in original).  The Court further held that an insured's failure to return a written
rejection to the insurer "was not a proper rejection of the option to stack"; thus,
stacking of UIM and UM benefits "must be implied as a matter of law."  *Id*.

Here, the state law at issue in this case is not whether State Farm must
provide UIM and UM benefits to Plaintiffs despite Plaintiffs' failure to reject such
benefits in writing.  The issue is whether State Farm may reduce Plaintiffs' UIM
benefits without a written authorization to do so from Plaintiffs.  The Court finds
that exercising jurisdiction to resolve this issue would require this Court to make a

needless determination of state law.  Rather than predicting how the Hawaiʻi

Supreme Court would decide this issue, as this Court would do sitting in diversity,

the Court finds that Hawaiʻi state courts are best suited to determine whether

written rejection is required to reduce an insured's UM and UIM coverage.  *Keown*

*v. Tudor Ins. Co.*, 621 F.Supp.2d 1025, 1032 (D. Haw. 2008) ("The court finds that

it should decline jurisdiction to avoid needlessly determining a state law issue that

the Hawaii courts have yet to address.").

       The Court is further persuaded that the state court is best situated to

decide this issue because: (1) this case involves an ongoing parallel state

proceeding; (2) this case involves an area of law expressly reserved to the states;

and (3) there is no compelling federal interest.  As discussed above, a needless

determination of state law may involve each of the foregoing situations.  This

Court discusses each of these seriatim.

       First, "[c]ourts should generally decline to assert jurisdiction in

insurance coverage and other declaratory relief actions presenting only issues of

state law during the pendency of parallel proceedings in state court unless there are

circumstances present to warrant an exception to that rule."  *Am. Nat. Fire Ins. Co.*

*v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995) (internal quotation marks

omitted) (citation omitted)*, overruled in part on other grounds by Dizol*, 133 F.3d

1220.  "The Ninth Circuit construes 'parallel actions' liberally."  *Keown*, 621

F.Supp.2d at 1037. "Underlying state actions need not involve the same parties nor the same issues to be considered parallel." *Id*. "'[W]hen an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court,' the actions are considered 'parallel proceedings.'" *Choy v. Cont'l Cas. Co.*, No. CV 15-00281 SOM/KSC, 2015 WL 7588233, at *4 (D. Haw. Nov. 25, 2015) (alterations in original) (citing *Hungerford*, 53 F.3d at 1017). *See also Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 755 (9th Cir. 1996) ("It is enough that the state proceedings arise from the same factual circumstances.").

Here, the state action and the instant action arise out of the same factual circumstances, i.e., Mr. Pascual's collision with Mr. Windnagle. Accordingly, the state and federal actions constitute "parallel proceedings." State Farm does not present, nor is this Court able to find, any circumstances present to depart from the general rule that courts should "decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court." *Hungerford*, 53 F.3d at 1017. *See e.g. Dizol*, 133 F.3d at 1225 ("Indeed, when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim

for declaratory relief."); *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367–68

(9th Cir. 1991) (holding that retaining federal jurisdiction was proper because the

district court already had jurisdiction over plaintiff's removed bad faith lawsuit

when the defendant insurer filed its counterclaim for declaratory relief; thus, by

adjudicating the declaratory relief counterclaim, the district court avoided

piecemeal litigation).

     Second, this case involves insurance law, "an area that Congress has

expressly left to the states through the McCarran–Ferguson Act." *Robsac Indus.*,

947 F.2d at 1371.  "[T]he states regulate insurance companies for the protection of

their residents, and state courts are best situated to identify and enforce the public

policies that form the foundation of such regulations." *Employers Reinsurance*

*Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995) (citation omitted), *overruled in*

*part on other grounds by Dizol*, 133 F.3d 1220.  Thus, because retaining

jurisdiction over the removed action would require this Court to decide this

unresolved issue of state insurance law, "the better option is to remand this case to

the state court."  *Choy*, 2015 WL 7588233, at *6.

     Third, as explained previously, the sole basis of jurisdiction in this

action is diversity of citizenship.  Where the sole basis of jurisdiction is diversity of

citizenship, "the federal interest is at its nadir." *Robsac Indus.*, 947 F.2d at 1371.

"Thus, the *Brillhart* policy of avoiding unnecessary declarations of state law is

especially strong here." *Id*.

The Court thus finds that the first *Brillhart* factor, the avoidance of needless determination of state law, heavily weighs in favor of declining jurisdiction.

B.      Forum Shopping

The Court finds that the second *Brillhart* factor favors neither party. Plaintiffs initiated both the personal injury and declaratory judgment actions in state court.  State Farm simply removed the declaratory action to federal court, as is its right.  *See First State Ins. Co. v. Callan Assocs., Inc*., 113 F.3d 161, 162 (9th Cir. 1997) ("Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III.").  "If there is any forum shopping to be considered here, it cannot be said that one side is at fault more than the other, for neither can be faulted for seeking to litigate issues in the forum of its choice." *Smith v. Lenches*, 263 F.3d 972, 978 (9th Cir. 2001).  Under the circumstances, this factor is a wash.

C.      Duplicative Litigation

The Court finds that the final *Brillhart* factor is also neutral.  "The Ninth Circuit has found litigation duplicative if the same issues are at stake in both actions." *Benevedes*, 2009 WL 705541, at *4.  *See, e.g., Robsac*, 947 F.2d at 1373

(finding declaratory and state actions duplicative because the federal declaratory suit "was virtually the mirror image of the state suit").  Although the issues in the state personal injury action are related and parallel to the instant declaratory judgment action, the actions deal with different state law issues.  Accordingly, the litigation is not duplicative.  This factor neither weighs in favor of exercising jurisdiction nor declining jurisdiction.

D.    The *Dizol* Factors

In addition to the *Brillhart* factors, the court may consider a number of additional factors, including:

> 1) whether the declaratory action will settle all aspects of the controversy; 2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory action is being sought merely for the purpose of procedural fencing or to obtain a "res judicata" advantage; or 4) whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider 5) the convenience of the parties; and 6) the availability and relative convenience of other remedies.

("*Dizol*" factors) *Dizol*, 133 F. 3d at 1225 n.5.  Although neither party has discussed any of the foregoing *Dizol* factors in detail, the Court has considered each of these additional factors and finds that none of these significantly weigh in favor of either party except the first factor—whether the declaratory action will settle all aspects of the controversy.

The federal action for declaratory relief will not settle all aspects of

the controversy, which includes the personal injury state action filed by Plaintiffs against Mr. Pascual.  Even if this Court were to assert jurisdiction to determine the issues in this declaratory judgment action, the personal injury action in state court remains.  *See e.g., Owners Ins. Co. v. Monte Vista Hotel*, No. CV 09-8095-PCT-MHM, 2010 WL 447343, at *4 (D. Ariz. Feb. 4, 2010) (finding that this consideration weighed in favor of abstention because, even assuming the Court was able to resolve the issue in the declaratory action, the damages in the state tort case would remain outstanding).  Accordingly, this factor weighs in favor of declining jurisdiction.

The Court finds that the first *Brillhart* factor—avoidance of needless determination of state law—weighs heavily in favor of declining jurisdiction.  In addition, the Court finds that at least one of the *Dizol* factors also favors declining jurisdiction.  Because the Court finds that the other two *Brillhart* factors are neutral, on balance, the *Brillhart* and *Dizol* factors favor declining jurisdiction in this action.

## CONCLUSION

In light of the foregoing considerations, the Court FINDS and RECOMMENDS that the district court GRANT Plaintiffs Christopher Windangle and Deanna Windangle's Motion to Decline Jurisdiction and Remand Proceedings filed on June 2, 2016.  The Court recommends that this case be remanded to the

Circuit Court of the First Circuit, State of Hawaiʻi.

    IT IS SO ORDERED.

    DATED:      Honolulu, Hawaiʻi, August 31, 2016.



                          /S/ Kenneth J. Mansfield
                         Kenneth J. Mansfield
                         United States Magistrate Judge


*CHRISTOPER WINDNAGLE & DEANNA WINDNAGLE VS. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY*; CV 16-00218 JMS-KJM; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS CHRISTOPHER WINDNAGLE AND DEANNA WINDNAGLE'S MOTION TO DECLINE JURISDICTION AND REMAND PROCEEDINGS